Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3429 | **DATE** | 1/28/2002 |
| **CASE TITLE** | Edwards vs. United Air Lines | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment. Judgment is therefore entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. All schedules set in this case including pretrial conference set for 3/1/02 and trial set for 3/18/02 are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 29 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS docketing deputy initials | 23 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK 02 JAN 28 PM 5:36 | | |
| | Copy to judge/magistrate judge. | | 1/28/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



RONALD R. EDWARDS,

    Plaintiff,

v.     No. 00 C 3429

UNITED AIR LINES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Ronald Edwards, who is HIV-positive, worked for United Air Lines ("UAL") in Chicago as a cabin serviceman, and was a member of the International Association of Machinists ("IAM") and under its contract with UAL. After requesting a shift change under the contract, he stopped reporting for work in early June 1999, because he felt unwell, and did not return. In late June 1999, he was seen by a UAL physician, who determined that Mr. Edwards was not too ill to perform his duties. Mr. Edwards disputed this conclusion with Pat Puleo, his supervisor, in the context of discussing whether he was eligible for an extended medical leave program available to UAL employees under the IAM contract. Ms. Puleo denied his request. Mr. Edwards did not then or later provide any documentation that would raise doubts about the UAL physician's determination. He did not return to work or contact UAL again. In early July, his shift



change was granted and posted, but he was not at work to read the notice. Ms. Puleo tried unsuccessfully to reach him three times during the month of July 1999, and then reported him to human services, which terminated him at the end of August 1999. This disability discrimination lawsuit followed. UAL moves for summary judgment, and I grant the motion.

I.

Mr. Edwards, then a UAL employee with HIV, transferred from Miami to Chicago in May 1999 to work as cabin serviceman, but only showed up for work for a month. He was covered by an IAM union contract that provided for up to two years of "extended illness status." In early June 1999, Mr. Edwards asked Ms. Puleo if he could change shifts because he had a "medical condition." He told Ms. Puleo that if she wanted to know what his condition was, she could look it up in his file. Shift changes are governed by the contract, and he bid on a change. Shortly thereafter, he stopped reporting to work because he felt ill. He apparently requested to be placed on the extended medical leave available for up to two years under the union contract. The decision whether to require medical reports before placing an employee on this status varies with the individual department. Pl. Ex. A at 14-15. Following Ms. Puleo's usual practice, she sent Mr. Edwards to see Dr. Robert McGuffin of UAL, a physician who performs some of the examinations for UAL at Chicago's O'Hare International airport. On June 28,

1999, Mr. Edwards informed Dr. McGuffin that he had HIV, and had been sick, weak, and depressed. After the examination, Dr. McGuffin filled out forms stating that Mr. Edwards could return to work and perform his regular job duties.

Mr. Edwards told Ms. Puleo about Dr. McGuffin's finding, and said he disagreed. She told him that she was not a physician, and had to go along with what Dr. McGuffin said. Ms. Puleo concluded, because of Dr. McGuffin's report, that Mr. Edwards was not eligible for extended illness status. Mr. Edwards told her at this time that he was HIV-positive. She testifies that she asked him for documentation about his condition, Pl. Ex. C at 27; he disputes this. Ex. E at 147; it is likewise disputed whether she gave him paperwork to take advantage of the UAL family leave policy. Ex C at 27-28, Ex D at 148-49. I must resolve these disputes in Mr. Edward's favor for the purposes of this motion. Mr. Edwards left and never communicated with Ms. Puleo again. He never provided UAL with any medical documentation about his condition. Mr. Edwards was granted a shift change in early July 1999, which was posted, but he did not find out about it because he was absent. Ms. Puleo telephoned Mr. Edwards at home on July 7, 22, and 28, without success. She then spoke to Ms. Livingston about Mr. Edwards' absence, but did not mention anything about his illness. Ms. Livingston said that Mr. Edwards should be fired, and he was fired on August 30, 1998, nearly three months after he had last reported

to work. This lawsuit followed.

II.

UAL moves for summary judgment. Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001).

Unlawful discrimination under the Americans with Disabilities Act ("ADA") includes both discriminatory discharge and the failure to provide reasonable accommodation. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (citing 42 U.S.C. § 12112(a), (b)(5)(A)). Once an employer is informed about a disability[1] and a requested accommodation, "the parties [must]

---

[1] I am assuming for purposes of this decision that Mr. Edwards could show that he had a disability as defined by the ADA that would allow him to work with a reasonable accommodation. 42 U.S.C. § 12111(8). Whether an extended medical leave is a reasonable accommodation required of an employer is generally a question of fact. *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601 (7th Cir. 1998). That assumes, however, that the

-4-

engage in an interactive process to determine what precise accommodations are necessary." *Ross v. Indiana State Teacher's Ass'n Ins. Trust,* 159 F.3d 1001, 1013 (7th Cir. 1998), quoting from *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1137 (7th Cir. 1996). Liability "ensues only where the employer bears responsibility for the breakdown [in the process]." *Id.* Where "the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." *Beck,* 75 F.3d 1137. "Neither the employer nor the employee can sit back and wait for the interactive process to happen." *EEOC v. Yellow Freight Sys. Inc,* 253 F.3d 943, 958-959 (7th Cir. 2001) (en banc) (Diane P. Wood, J., *concurring and dissenting*). In *Beck,* the Seventh Circuit explains that "[n]either the ADA nor the regulations assign responsibility for when the interactive process fails," and "[n]o hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." 75 F.3d at 1135. What I am to do in such a circumstance is to "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific

---

employee has engaged in an interactive process before coming to court.

accommodations are necessary. . . . A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Id.* When this occurs, I am to "attempt to isolate the cause of the breakdown and then assign responsibility." If, as here, "the cause of the breakdown might be missing information," then, [w]here the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." *Id.* at 1136. The Fifth Circuit has held that "[w]hen the nature of the disability, resulting limitations, and necessary accommodations are uniquely within the knowledge of the employee and his health-care provider, a disabled employee cannot remain silent and expect his employer to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996).

Here, Mr. Edwards did request extended medical leave and inform UAL of his disability. UAL responded in compliance with its responsibilities to participate in the interactive process, by having Mr. Edwards examined by Dr. McGuffin, and reaching, on the basis of his report, the determination that a particular accommodation Mr. Edwards sought (extended medical leave) was not needed. If Mr. Edwards wanted to challenge the decision that he

-6-

could return to work, the ball was then in his court. *See Steffes v. Stepan Co.,* 144 F.3d 1070, 1073 (7th Cir. 1998) (plaintiff must clarify extent of his restrictions). He had control of the information, if it existed, that contradicted Dr. McGuffin's report, but did not provide it. He took no further steps to work out an accommodation. In fact, after his conversation with Ms. Puleo, he was incommunicado. Through no fault of its own, "the employer was left to guess what actions it should take." *Beck,* 75 F.3d. at 1137. Mr. Edwards says that UAL did not ask him for further documentation, but he could not just wait for UAL to inquire, thus leaving it in the dark. "Participation is the obligation of both parties," so an "employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs." *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 317 (3rd Cir. 1999). I assign to Mr. Edwards the responsibility for the breakdown in the interactive process, thus relieving UAL of liability for failure to reasonably accommodate.

If Mr. Edwards' theory is that he was denied reasonable accommodation in not being given a shift change that he requested, the answer is, first, that an employee is not entitled to short-circuit a labor contract to provide a special accommodation, *Winfrey v. City of Chicago,* 259 F.3d 610, 618 (7th Cir. 2001), he had to go through the normal process established in the contract,

which he did. Second, Mr. Edwards in fact got the shift change that he requested, within a month, so if there was a duty, it was fulfilled. Mr. Edwards asserts that UAL had a duty to inform him about the shift change. UAL posted notification in the normal way, although he wasn't at work to find out. If UAL had some responsibility to reach him at home to tell him, Me. Puleo tried, unsuccessfully, three times. Mr. Edwards says UAL should have sent him a letter, but he did not even call or write UAL himself to find out whether accommodation had been made. UAL is not at fault for the breakdown in the process.

III.

Mr. Edwards also proceeds under the discriminatory discharge theory. Lacking direct evidence, he proceeds under the indirect, burden-shifting approach of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). For this, he must first establish a prima facie case of disability discrimination, showing that (1) he was within the protected class (disabled within the meaning of the ADA); (2) he was performing his job to the employer's legitimate expectations; (3) he was discharged; and (4) other such evidence that indicates that it is more likely than not that disability was the reason for the discharge. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). The inference can be raised by showing that the employee was treated differently from similarly situated non-disabled employees. *Spath v. Hayes Wheels Int'l-Indiana, Inc.*,

-8-

211 F.3d 392, 397 (7th Cir. 2000). If the plaintiff makes a prima facie case, the defendant may rebut by introducing a legitimate nondiscriminatory reason, and the plaintiff must then show that this reason is pretextual. *Freeman v. Madison Metropolitan School Dist.*, 231 F.3d 374, 379 (7th Cir. 2000).

This case fails at the stage of the prima facie case. Mr. Edwards argues that nondisabled employees received progressive discipline before they were terminated. He offers evidence of two cases, one in which an employee was absent on five occasions for 48 days due to illness, and another where an employee was absent for 33 days on six occasions. Pl. Ex. I. Neither of these employees were discharged. *Id.* However, Mr. Edwards has not shown that these employees were similarly situated to himself. He was absent for three months, and incommunicado for two. That is not comparable to periodic absences that (in one case) amount to about two working months, but not concentrated all together. Moreover, Mr. Edwards does not indicate that these employees had been determined to be able to work by competent medical authority, as he was; his prolonged absence in June and July was therefore, unlike theirs, unjustified and unexplained. Because he has failed to make his prima facie case, the burden of does not shift, and I need not discuss whether UAL's legitimate reason for discharging him (violation of attendance rules) was pretextual.

IV.

UAL's motion for summary judgment is granted.

**ENTER ORDER:**

*Elaine E. Bucklo* (signature)

**Elaine E. Bucklo**
United States District Judge

Dated: January 28, 2002